**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG A. HATCH,** | : | |
| **Executor of the Estates of** | : | **Civil Action No. 05-CV-2050** |
| **Jane T. Bender and the Estate** | : | |
| **of Richard B. Bender,** | : | **(Chief Judge Kane)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PRUDENTIAL FINANCIAL, INC.,** | : | |
| **a foreign business corporation, d/b/a** | : | |
| **THE PRUDENTIAL INSURANCE** | : | |
| **COMPANY OF AMERICA,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

In this action, Plaintiff Craig A. Hatch, the Executor of the estates of Jane T. and Richard B. Bender, has sued Defendant Prudential Financial, Inc. ("Prudential") on the grounds that Defendant was negligent and breached a fiduciary duty to the Benders by selling the couple an annuity that would not pay out unused portions of their initial capital investment upon the death of the last surviving annuitant. Plaintiff claims that Defendant failed to provide the Benders, allegedly conservative and unsophisticated investors, with proper or sufficient choices to make an intelligent and informed decision about their financial needs. Defendant has moved for summary judgment, and the motion is ripe for disposition.

## I. INTRODUCTION

Before setting forth the background facts relevant to this dispute and the instant motion for summary judgment, the Court finds it necessary to comment briefly on the record that has been submitted, and to note Plaintiff's failure to comply with the Local Rules of this Court and to adhere to the deadlines applicable to this case that were set forth in the case management order entered on January 19, 2006.

On August 14, 2006, Defendant submitted a statement of material facts in support of its motion for summary judgment, in accordance with Rule 56.1 of the Local Rules of this Court. See LR 56.1 ("A motion for summary judgment filed pursuant to Fed.R.Civ.P.56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."). Defendant has supported its version of the facts by citation to the affidavit of Andrew Grace, the sales agent who sold the Benders the annuity that is the subject of this litigation, as well as to copies of the annuity contract and other related documents produced in discovery in this case.

In contrast, Plaintiff has not submitted a counterstatement of material facts as required by Local Rule 56.1, but instead has submitted a very short response to Defendant's motion, and has appended thereto a five-paragraph affidavit of Plaintiff and a report from Vincent Micciche, a putative expert apparently lacking any personal knowledge of the Benders or their financial goals, and who was not disclosed to Defendant during litigation.[1] Plaintiff has not contested Defendant's assertion that Plaintiff had never previously identified Micciche or anyone else as an expert witness, nor does Plaintiff dispute Defendant's assertion that Plaintiff never timely produced an expert report during the course of litigation.[2]

---

[1] The Court is aware that under Rule 56(e) of the Federal Rules of a Civil Procedure, parties may submit supporting and opposing affidavits. Fed. R. Civ. P. 56(e). Nevertheless, such affidavits must be based upon personal knowledge of the affiant. Id. ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). It is clear that Micciche did not have personal knowledge regarding the dealings between the Benders and Andrew Grace, nor regarding the Benders' financial goals, objectives, and risk tolerance.

[2] Pursuant to the case management order, expert reports were due not later than June 19, 2006. Plaintiff did not produce Micciche's expert report until September 20, 2006, when

Upon review of Micciche's report, the Court agrees with Defendant that it is filled with speculative assertions and legal conclusions that appear to have little or no basis in fact found in the remainder of the record; indeed, a number of Micciche's unsupported assertions are contradicted by evidence that Defendant submitted. Moreover, the report was submitted in connection with Plaintiff's opposition to Defendant's motion for summary judgment three months after the deadline for submitting expert reports had passed, thereby giving Defendant no opportunity to review the document, or to question Micciche about the content and substance of his report. Finding that the report contains little more than Micciche's opinion testimony with no apparent basis in fact, and finding further that Plaintiff has submitted Micciche's report well beyond the deadline for submission of expert reports, the Court will disregard the report for purposes of adjudicating the instant motion for summary judgment.

The Court has reviewed the remainder of the record submitted by the parties. Where Plaintiff has offered mere argument or no evidence in support of Plaintiff's denial of a fact alleged in Defendant's properly supported statement, the Court has accepted the fact as true.[3]

---

Plaintiff attached the report to his response to Defendant's motion for summary judgment. Accordingly, the report was produced approximately three months after it was due. Plaintiff has offered no justification for this delay.

[3] In his ten-paragraph response, Plaintiff provides citation to the record in only two instances. In the first, Plaintiff relies upon Micciche's report to support the assertion that "Andrew Grace (Grace) of Prudential Financial, Inc., (Prudential), was a registered representative of Pruco Securities Corp., a wholly owned subsidiary of Prudential, and an employee of Prudential during all relevant periods set forth in the Complaint." (Doc. No. 17, at 1-2.) In the second citation, Plaintiff relies upon his own affidavit to support his assertion that "The Benders were conservative and unsophisticated investors who were not presented with proper or sufficient choices to make an honest, informed, fair and intelligent decision." (Id. at 2.) The remaining eight paragraphs that comprise Plaintiff's response do not cite to any evidence in the record for support. Plaintiff's limited showing is inadequate to demonstrate genuine issues of material fact. See Celotx Corp. v. Catrett, 477 U.S. 317, 324 (1986)

See id.

## II. BACKGROUND

In July 2001, the Benders approached Andrew D. Grace ("Grace"), a sales agent working out of Prudential's office in Camp Hill, Pennsylvania, in order to review the couple's insurance policies and to change the beneficiaries of their policies primary to each other and secondary to charities. (Doc. No. 14, ¶ 2.) The Benders were Grace's clients. (Doc. No. 14, Ex. A., Aff. of Andrew D. Grace, ¶ 1.)

In October 2001, dissatisfied with the rates of return they were receiving on three certificates of deposit that they owned, the Benders requested information from Grace on whether other investment options were available to maximize the income potential of their investment. (Id. ¶ 3.)

Over the course of the next four months, Grace discussed various options that were available to the Benders. (Id. ¶ 4.) Through this process, Grace understood that the Benders were concerned primarily with receiving the highest guaranteed monthly payment that they could receive on their investment for the remainder of their lives. (Id.) Additionally, the Benders did not have family to whom they wished to leave money, and they were unconcerned about preserving the principal as long as they were guaranteed an income for life. (Id. ¶¶ 2, 4.) Because the Benders did not have anyone to whom they wished to leave the money they were to use in order to purchase an annuity, they elected not to take a reduced payment or seek return of

(nonmoving party may not rest on allegations in the complaint but must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial"); see also LR 56.1 ("Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.").

their principal investment in installments, opting instead for a higher monthly payment. (Id. ¶ 5.) In the course of helping the Benders determine the appropriate investment vehicle to meet their goal of maximizing their income stream during their lives, Grace had very limited discussion with the Benders about their medical histories, although he was aware that Mr. Bender had previously recovered from prostate cancer. (Id. ¶ 6.)

On February 12, 2002, Prudential prepared an Income Annuity Illustration for Richard Bender. The illustration indicated for Mr. Bender that a purchase payment of $100,000 would provide monthly payments of $778.07 to the Benders for as long as either of the couple was living. The illustration provided that "[p]ayments cease upon the death of the last surviving annuitant." (Doc. No. 14, Ex. D, Prudential Income Annuity Illustration.)

On or about February 15, 2002, the Benders completed an application to purchase an Income Annuity Contract. (Doc. No. 14, Ex. C, Prudential Income Annuity Application.) In the application, the Benders selected a payment option of Joint and Survivor Life Annuity, with 100% to the primary annuitant and 100% to the secondary annuitant. (Id.) The Benders specifically did not choose a Joint and Survivor Life Annuity with an installment refund or payments for a specified period, both of which options would have preserved the unused portion of the annuity fund but would have also decreased the monthly payments to the Benders. (Id.) Section 10 of the application provides that "[u]nless a period certain option is elected, after the death of both the primary and secondary annuitants, all payments stop." (Id.)

In section 12 of the application, the Benders acknowledged their understanding that the "contract meets [their] needs and financial objectives" and that "the purchase payment becomes the absolute property of the company." (Id.) On a customer-information form that was returned

to Prudential with the Bender's application, Richard Bender indicated that he was purchasing the annuity for income purposes and indicated further that his risk tolerance was conservative and that the Benders' investment objectives were for income, not preservation of capital. (Id.) Additionally, Grace attested that he "informed [the Benders] that the type of annuity they chose would not refund or pay out any unused portions of the $100,000 if both owners were to die before the entire amount was paid out." (Grace Aff. ¶ 8.) According to Grace's testimony, the Benders did not object to this because their goal was to receive the highest amount of monthly income available from their purchase and because they did not have anyone to whom they wished to leave their money. (Id.)

In the course of his dealings with the Benders, Grace became aware that the couple had an additional $100,000 deposited in two different banks for emergency and liquidity needs. (Id. ¶ 9.)

On or about February 19, 2002, Prudential sent the annuity contract to the Benders. (Doc. No. 14, Ex. E, Annuity Contract.) The contract provided, inter alia, that the Benders had a ten-day period in which they could cancel the contract. (Id.) The contract provides further that Prudential "will make monthly annuity payments under this contract starting on March 15, 2002, of $778.07 each for as long as any of the annuitants is living. Payments end with the last one due before the death of the last to die of the annuitants if such death occurs after all of the payments certain have been paid." (Id.)

At the time the Richard and Jane Bender purchased the annuity contract from Defendant, they were 75 and 78 years old, respectively. (Compl. ¶ 19.) Richard Bender died on July 7, 2004. (Id. ¶ 21.) Neither the complaint nor any evidence in the record sets forth the date upon

which Jane Bender died, but Plaintiff has averred that she died sometime after Richard Bender. (Id.)

**III. STANDARD OF REVIEW**

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When no genuine dispute exists, summary judgment should be granted where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When seeking summary judgment, the moving party has the burden of "informing the district court of the basis for its motion." Id. at 323. This burden is met when the moving party can demonstrate an "absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof.'" UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004) (internal citations omitted).

**IV. DISCUSSION**

Plaintiff has brought two separate claims against Defendant, both of which sound in tort. First, Plaintiff claims that Defendant owed a fiduciary duty to the Benders and that Defendant breached this duty by, in essence, advising them to purchase an annuity that was unlikely to fulfill their investment objectives. According to the complaint, Defendant's conduct was "willful, outrageous, and showed a reckless indifference to the rights of the Benders." (Compl. ¶ 31.) In Count II of the complaint, Plaintiff alleges that Defendant is liable for negligence in

selling the Bender's the annuity they purchased. Defendant has moved for summary judgment on both of Plaintiff's claims.

**1. Breach of Fiduciary Duty**

Defendant argues initially that under Pennsylvania law, the relationship between an insurance company and its insured is one of buyer and seller and that a fiduciary relationship does not arise prior to parties entering into an insurance agreement. Defendant contends that annuity contracts are merely another product an insurer sells to its customers, and therefore the Court should find that Pennsylvania law would not recognize a fiduciary relationship between the Benders and Defendant. According to Defendant, the only causes of action available to Plaintiff are breach of contract or for breach of good faith and fair dealing, neither of which was pleaded in this case. As Plaintiff has not brought claims for either breach of contract or breach of good faith and fair dealing, Defendant argues that it is entitled to summary judgment on Count I. Moreover, Defendant maintains that even if Prudential owed the Benders a fiduciary duty, Plaintiff has failed to identify a breach of that duty or to support his claim to breach with evidence.

Under Pennsylvania law, fiduciary relationships exist "where by virtue of the respective strength and weakness of the parties, one has a power to take advantage of or exercise undue influence over the other." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 22 (Pa. Super. Ct. 2002). Accordingly, "the critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on the one side or 'weakness, dependence, or trust, justifiably reposed' on the other side." Id. at 23 (emphasis in original) (citing Basile v. H & R Block, 777 A.2d 95, 101 (Pa.

Super. Ct. 2001)). A fiduciary duty may attach "'whenever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest.'" Basile, 777 A.2d at 102 (quoting Brooks v. Conston, 51 A.2d 684, 688 (Pa. 1947)). Indeed, "those who purport to give advice in business may engender confidential relations if others, by virtue of their own weakness or inability, the advisor's pretense or expertise, or a combination of both, invest such a level of trust that they seek no other counsel." Basile, 777 A.2d at 102 (citations omitted). In Pennsylvania, a claim for breach of fiduciary duty must allege that: "(1) the defendant acted negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) the plaintiff suffered injury; and (3) the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries." Schmidt, Long & Assocs. v. Aetna U.S. Healthcare, Inc., No. 00-3683, 2001 WL 856946, at *9 (E.D. Pa. July 26, 2001).

The foregoing case law suggests that whether a fiduciary duty arises depends not on the goods or services that are the subject of the transaction, but the character of the relationship between the parties to the transaction. The Court does not find that the record contains evidence sufficient to impose such a duty on Grace. However, even assuming that Pennsylvania law would impose a fiduciary duty upon Andrew Grace given the nature and quality of his relationship with the Benders, Plaintiff has failed to identify any breach of such duty. The evidence of record indicates that the Benders approached Grace about procuring an annuity contract to satisfy their single objective of maximizing their guaranteed monthly income during their lifetimes, without regard to the remainder of the principal capital investment. Andrew Grace's affidavit attesting to the Benders' investment objectives and preferences is supported by

the documentary evidence of record.[4] In short, the Court finds an absence of legal support and evidence to support Plaintiff's claim that Defendant breached a fiduciary duty to the Benders, and the Court will enter summary judgment in favor of Defendant on Count I.

**2. Negligence**

Plaintiff's negligence claim is essentially a restatement of his claim that Defendant breached a fiduciary duty to the Benders by selling the couple the annuity that they ultimately purchased. Specifically, Plaintiff alleges that "Defendant owed a duty to the Benders to provide financial advice to them in accordance with their stated investment objective of 'income' and their risk preference as 'conservative.'" (Compl. ¶ 33.) Plaintiff contends that Defendant breached this asserted duty by "selling the Benders an annuity that would not meet their investment objective; to wit, Defendant advised the Benders to purchase an annuity that would not even result in a return of principal for a period of ten (1) years and nine (9) months after payments began, this despite Defendant's knowledge of the Benders' advanced age and failing health." (Id. ¶ 34.)

---

[4] At various places in his brief in opposition, Plaintiff has asserted "as a matter of law" that Defendant had a fiduciary or other duty under the particular circumstances of this case – namely, given the Benders' advanced age, health, and "particular life expectancy" – to inquire regarding the Benders' "health, particular life expectancy, and or . . . [to] illustrate other financial products (both insurance and non-insurance in nature), and their specific returns." (Doc. No. 17, ¶¶ 9, 10.) Plaintiff offers no legal citation or other authority for this declaration. Additionally, Plaintiff has failed to support his intimation that the Benders' age, alleged poor health, or other circumstances somehow warranted a particular standard of care, much less that Grace or Defendant somehow failed to provide such care. Furthermore, nothing in the record supports Plaintiff's bare assertion that Defendant's advice to the Benders was inadequate, nor does any probative evidence support Plaintiff's tacit suggestion that the Benders' age rendered them incapable of determining their own financial goals, objectives, and values. As with the negligence claims set forth in Count II, Plaintiff has simply failed to provide legal support for his claim that Defendant breached a fiduciary duty to the Benders, and has failed to provide evidentiary support for his factual allegations.

Under Pennsylvania law, an insurance agent or broker owes his prospective insured or annuitant a duty of care to obtain the insurance coverage or annuity that a reasonably prudent person would have obtained given the particular circumstances. See, e.g., Fiorentino v. Travelers Ins. Co., 448 F. Supp. 1364, 1369-70 (E.D. Pa. 1978). Upon review of the record, the Court cannot find any evidence to support Plaintiff's claims that Grace breached such a duty. To the contrary, the evidence indicates that Grace worked with the Benders over a period of months and provided the Benders with various options for the couple to consider given their stated objectives and investment preferences. The evidence indicates further that the Benders selected an annuity option that would provide the couple with the greatest guaranteed monthly payment, as opposed to an alternative annuity that would have returned some of the purchase price in exchange for a reduced monthly payment. The evidence also suggests only that the Benders purchased the annuity contract knowingly and willingly, and evidenced their understanding of the investment vehicle they were selecting. This evidence does not support Plaintiff's assertions that Grace or Defendant was negligent. To the contrary, it appears that Defendant sold Plaintiff precisely the annuity contract that the couple requested. Moreover, given that the record indicates that the Benders made an informed decision regarding the annuity purchased, and that the annuity purchased conformed with the Benders' stated investment objectives, the Court cannot find that the couple suffered damages as a result of purchasing the annuity. Plaintiff has failed to come forward with any probative evidence to support his claim that Defendant was negligent, and summary judgment must accordingly be entered in Defendant's favor.

An appropriate order follows this memorandum.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG A. HATCH,** | **:** | |
| **Executor of the Estates of** | **:** | **Civil Action No. 05-CV-2050** |
| **Jane T. Bender and the Estate** | **:** | |
| **of Richard B. Bender,** | **:** | **(Chief Judge Kane)** |
| **Plaintiff** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **PRUDENTIAL FINANCIAL, INC.,** | **:** | |
| **a Foreign business corporation, d/b/a** | **:** | |
| **THE PRUDENTIAL INSURANCE** | **:** | |
| **COMPANY OF AMERICA,** | **:** | |
| **Defendant** | **:** | |

**ORDER**

**AND NOW**, this 14th day of November 2006, upon consideration of Defendant's motion for summary judgment (Doc. No. 14), and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant on all counts and to close the file.

s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania